Terry Goddard
Attorney General
Mary R. O'Grady, Bar No. 011434
Solicitor General
Christopher A. Munns, Bar No. 022611
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-3333
Fax:  (602) 542-8308
Christopher.Munns@azag.gov
Attorneys for Defendant Terry Goddard

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ROBERTO JAVIER FRISANCHO,<br><br>                  Plaintiff, *pro se*,<br><br>vs.<br><br>JAN BREWER, in her official capacity as Governor of the State of Arizona; and TERRY GODDARD, in his official capacity as Attorney General of the State of Arizona,<br><br>                  Defendants. | Case No: CV-10-926-PHX-SRB<br><br>**DEFENDANT ATTORNEY GENERAL TERRY GODDARD'S MOTION TO DISMISS** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant Attorney General Terry Goddard moves to dismiss this action because Plaintiff's claims are not ripe and because Plaintiff lacks standing to pursue them.  This motion is supported by the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHHORITIES**

**I.    INTRODUCTION**

Plaintiff challenges the Support Our Law Enforcement and Safe Neighborhoods Act (SB1070).  SB 1070 does not take effect until July 29, 2010, and because of legislative amendments approved after Plaintiff filed his lawsuit, it will never be

implemented as it was originally enacted. Plaintiff's only claimed injury is that "[a]s a Hispanic, [he] is likely to be asked for his papers based on the 'reasonable suspicion' that he is undocumented on the basis of his ethnicity." Complaint ¶ 15. Plaintiff's assertion of injury rests on speculation about what may happen in the future. It also rests on an erroneous understanding of Arizona law because it fails to consider the amendments to SB 1070 found in HB2162 that prohibit law enforcement officials from relying on race, color or national origin to formulate reasonable suspicion of unlawful presence unless permitted to do so by the United States or Arizona Constitution. This lawsuit presents no justiciable controversy and should be dismissed.

## II.   FACTUAL BACKGROUND

On April 23, 2010, Arizona's Governor signed SB 1070, which included a number of statutory changes intended to addresses the problem of illegal immigration in Arizona. *See* SB 1070, § 1.[1] Plaintiff's complaint focuses on A.R.S. § 11-1051, which requires law enforcement officers, under certain circumstances, to determine a person's immigration status based on "reasonable suspicion" that the person is not lawfully present in the United States. A.R.S. § 11-1051(B). As originally enacted in SB 1070, Section 11-1051(B) provided in part:

> For any lawful contact made by a law enforcement official or a law enforcement agency of this state or a law enforcement official or a law enforcement agency of a county, city, town or other political subdivision of this state where reasonable suspicion exists that the person is an alien who is unlawfully present in the United States, a reasonable attempt shall be made, when practicable, to determine the immigration status of the person, except if the determination may hinder or obstruct an investigation. . . . A law enforcement official or agency of this state or a county, city, town or other political subdivision of this state may not solely consider race, color or national origin in implementing the requirements of this subsection except to the extent permitted by the United States or Arizona Constitution.

---

[1] A copy of SB 1070 is Exhibit A to Plaintiff's Complaint.

One week later, on April 30, 2010, the Governor signed HB 2162 (attached as Exhibit A hereto), which amended A.R.S. § 11-1051(B) as it had been enacted in SB 1070. These subsequent amendments restrict the scope of A.R.S. § 11-1051(B) and expressly prohibit the use of race, color or national origin in implementing this law, except as permitted by the state of federal constitution. Now, as amended by HB 2162, the pertinent portions of A.R.S. § 11-1051(B) read:

> For any lawful stop, detention or arrest made by a law enforcement official or a law enforcement agency of this state or a law enforcement official or a law enforcement agency of a county, city, town or other political subdivision of this state in the enforcement of any other law or ordinance of a county, city or town or this state where reasonable suspicion exists that the person is an alien and is unlawfully present in the United States, a reasonable attempt shall be made, when practicable, to determine the immigration status of the person, except if the determination may hinder or obstruct an investigation . . . *A law enforcement official or agency of this state or a county, city, town or other political subdivision of this state may not consider race, color or national origin in implementing the requirements of this subsection except to the extent permitted by the United States or Arizona Constitution.*

(Emphasis added.)

The provisions in SB1070, as amended by HB2162, will take effect July 29, 2010, which is 90 days after Arizona's Legislature adjourned its regular session. *See* Ariz. Const. Art. 4, Pt. 1, §1(3). When she signed SB 1070, the Governor also issued Executive Order 2010-09, which requires Arizona's Peace Officer Standards and Training Board to prepare a training program for law enforcement officers before SB 1070 takes effect.[2]

Plaintiff filed his Complaint on April 27, 2010—four days after the Governor signed SB 1070 but before she approved the amendments in HB 2162 and three

---

[2] A copy of Executive Order 2010-09 is Exhibit B hereto.

months before the legislation's July 29 effective date. Plaintiff describes himself as "a Hispanic, . . a natural born citizen of the United States and a resident of the District of Columbia." Complaint ¶ 5. According to the Complaint, he plans to come to Arizona in September 2010 and "return over the next few years" to research a 1997 "joint operation of the Chandler Police Department and the Tucson Border Patrol Sector to capture undocumented immigrants." *Id.* His only alleged injury is that, because he is Hispanic, he "is likely to be asked for his papers based on the 'reasonable suspicion' that he is undocumented on the basis of his ethnicity." Complaint ¶ 15.

## III.   ARGUMENT

Plaintiff's Complaint fails to present a justiciable case or controversy. Under Article III of the United States Constitution, the federal courts may only adjudicate a "case or controversy." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750 (1984). The doctrines of standing and ripeness ensure that federal courts exercise jurisdiction only in cases that present a viable case or controversy. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). Plaintiff has the burden to establish that the federal court has jurisdiction. *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). At the pleading stage, he may satisfy this burden by alleging facts that, if proven, establish the court's jurisdiction. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006).

The Complaint fails to establish that Plaintiff's claims are ripe for judicial review or that he has the necessary standing to bring this action.

### A.   **Plaintiff's Claims Are Not Ripe for Judicial Review.**

Under Article III, a federal court may only exercise jurisdiction over a constitutional case or controversy, which requires a dispute that presents issues that are

4

"definite and concrete, not hypothetical or abstract." *Thomas,* 220 F.3d at 1139 (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). The ripeness doctrine "'is peculiarly a question of timing.'" *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (quoting *Buckley v. Valeo*, 424 U.S. 1, 114 (1976)). The "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3rd Cir. 1992) (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 148 (1967)). Plaintiff's Complaint presents no claim that is ripe for judicial review because Plaintiff does not allege an actual injury or a realistic danger of imminent injury.

### 1. Plaintiff's Complaint Does Not Satisfy the Constitutional Requirements for Ripeness.

The constitutional component of ripeness, derived from the strictures of Article III, requires that Plaintiff "face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,'" as opposed to merely "imaginary" or "speculative" injuries. *Thomas,* 220 F.3d at 1139 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). The analysis of ripeness often mirrors that of the injury-in-fact prong of the standing doctrine, leading courts to characterize it as "standing on a timeline." *Id.* at 1138. Accordingly, Plaintiff must demonstrate injury in fact "to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.'" *San Diego County*, 98 F.3d at 1126. When the claim involves prospective relief for a future injury, "[t]he question becomes whether any perceived threat to [the plaintiff] is sufficiently real and immediate to show an existing controversy." *Long Beach Area Chamber of Commerce v. City of Long Beach*, 2010 WL 1729710, *3 (9th Cir, 2010) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Plaintiff's Complaint does not satisfy these requirements.

Plaintiff does not allege any present injury and, instead, bases his claims solely on speculation that that, when he visits Arizona, he may be asked for documentation of his

5

lawful presence based only on his ethnicity.  Complaint ¶¶ 5, 15.  These allegations fail to satisfy the requirements for a ripe claim.  Plaintiff does not demonstrate that he has suffered any actual harm or that he is at risk of imminent harm as a result of Arizona's new law.  Plaintiff's allegations do not demonstrate a real threat that a law enforcement official or agency will stop him and question him about his immigration status.  Plaintiff's claim "rests upon contingent future events that may not occur as anticipated or indeed may not occur at all."  *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) and finding lack of ripeness for challenge to city's discontinuing health care insurance coverage to employees after they retire because plaintiffs had not yet retired and city had not denied them benefits after retirement).  Such a claim is not ripe for adjudication because he has not suffered and may never suffer a concrete and particularized injury.

Plaintiff also wrongly asserts that "[t]he Act would essentially require racial and ethnic profiling by police officers."  Complaint at 8, ¶ 37.  To the contrary, as amended by HB 2162, A.R.S. § 11-1051 explicitly states that law enforcement officers "*may not consider race, color or national original in implementing . . . this subsection except to the extent permitted by the United States or Arizona Constitution.*"    The United States Supreme Court has recognized that Mexican ancestry alone cannot provide reasonable suspicion that a person has unlawfully entered the country.  *United States v. Brignoni-Ponce,* 422 U.S. 873, 886 (1975).  And the Ninth Circuit has held that Hispanic ancestry is irrelevant to determining whether there is reasonable suspicion that a person is here unlawfully when a substantial part of the population is Hispanic.  *United States v. Montero-Camargo,* 208 F.3d 1122, 1132 (9th Cir. 2000) (en banc).  Thus, nothing in Arizona's law or the Constitution supports Plaintiff's fears.

The Court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  *Thomas,* 220 F.3d at

1138.  Because of its reliance on speculation and contingent events that may never occur, the Complaint fails to establish a real and immediate threat to Plaintiff of injury arising from operation of the Act and, therefore, presents no case or controversy ripe for judicial review.

### 2. The Prudential Component of Ripeness Also Supports Dismissing Plaintiff's Claims.

Because the case fails to satisfy the constitutional requirements for ripeness, the court need not reach analyze the prudential components.  Nevertheless, the prudential components also support dismissing this lawsuit.  Ripeness provides "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial."  *Am. Sav. Bank* v. *UBS Fin. Servs.*, 347 F.3d 436, 440 (2d Cir. 2003).  In applying the prudential ripeness doctrine, the courts consider two factors:  (1) the "fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration."  *Thomas*, 220 F.3d at 1141.

The first factor focuses on whether "the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (quoting *US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)).  "[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *See Bova*, 564 F.3d at 1096 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  In conducting this analysis, the Court should look primarily to the factual situation presented for consideration.  "A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate."  *Thomas*, 220 F.3d at 1141 (quoting *San Diego County*, 98 F.3d at 1132).

1    When a plaintiff asserts claims that are not based on a concrete factual situation,
2 as in the case at bar, the Court must rely on hypothetical and contingent scenarios in
3 reaching its decision and "applying it to actual controversies which subsequently arise
4 would be an 'exercise in futility.'" *Armstrong*, 961 F.2d at 412.  This reluctance to
5 decide important questions of law based on hypothetical situations springs from the
6 maxim that courts do not decide "constitutional questions in a vacuum." *Thomas*, 220
7 F.3d at 1141 (citations omitted).  For this reason, the Supreme Court has "emphasized
8 that, in our federal system, it is preferable that constitutional attacks on state statutes be
9 raised defensively in state-court proceedings rather than in proceedings initiated in
10 federal court." *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of*
11 *Ohio*, 471 U.S. 626, 638 n.8 (1985).  Federal courts are appropriately cautious about
12 "premature adjudication" of questions concerning the constitutionality of a "novel [s]tate
13 Act." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 79 (1997).  If raised in a
14 defensive posture at the state court level, the reviewing court will have concrete facts and
15 an actual controversy to evaluate when it determines the issues presented.
16    The Plaintiff here relies entirely on a hypothetical interrogation that may never
17 occur.  Prudential principles, as well as constitutional principles, support dismissing the
18 claim now.  Plaintiff's claims resemble those addressed in the *Thomas* case decided by
19 the Ninth Circuit.  In *Thomas*, the plaintiffs challenged a statute prohibiting landlords
20 from considering marital status or refusing to rent, sell or lease real property to an
21 unmarried couple.  *Thomas*, 220 F.3d at 1137.  Other than a broad statement that they
22 intended to continue refusing to rent their property to unmarried couples, the plaintiffs
23 could not identify any unmarried couple they had turned away in the past or any specific
24 circumstances in the future in which they would turn such couples away.  *Id.* at 1139.
25 Concluding that the plaintiffs' claims rested on hypothetical situations and hypothetical
26 tenants, the court found the case was not ripe for review.  *Id.* at 1142; *see also San Diego*
27 *County,* 98 F.3d at 1132. ("At this point, a decision on the merits of the plaintiffs'
28

constitutional claims would be devoid of any factual context whatsoever. Neither the district court nor this court can 'be umpire to debates concerning harmless, empty shadows.'") The Plaintiff in this case also relies entirely on a hypothetical stop or arrest that may never occur to support his claim that the Act is unconstitutional.

Under the second factor, the Court examines whether "withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Stormans*, 586 F.3d at 1126 (9th Cir. 2009)(quoting *MFS Intelenet*, 193 F.3d at 1118). The Court also determines whether the "regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.* (citing *Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 783 (9th Cir. 2000)). "Although the constitutional and prudential considerations are distinct, the absence of any real or imminent threat of enforcement, particularly criminal enforcement, *seriously undermines* any claim of hardship." *Thomas*, 220 F.3d at 1142 (emphasis added)*; see also San Diego County*, 98 F.3d at 1132-33 (concluding that, in light of absence of any criminal charges or threat of prosecution, any hardship "does not justify the exercise of jurisdiction"). Additionally, Arizona's law does not require Plaintiff that to alter his conduct in any way. Plaintiff is welcome to travel to Arizona in September and Arizona law imposes no new obligations on him.

For these reasons, the prudential aspects of ripeness also support dismissing this action. *See San Diego County*, 98 F.3d at 1133.

**B.     Plaintiff Lacks Standing To Bring His Claims.**

As is true of the ripeness doctrine, the standing requirement also ensures that federal courts exercise jurisdiction only in cases that present a constitutional case or controversy that is definite and concrete. *Thomas*, 220 F.3d at 1139. Plaintiff must demonstrate three elements to establish Article III standing: (1) he has suffered an injury-in-fact to a legally protected interest that is (a) concrete and particularized and (b)

1 actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable
2 to the challenged action of the defendant; and (3) that it is likely, as opposed to merely
3 speculative, that the injury will be redressed by a favorable decision. *Long Beach*
4 *Chamber of Commerce*, 2010 WL 1729710, at *3 (9th Cir. 2010). Because he seeks
5 declaratory and injunctive relief, Plaintiff must also establish a "very significant
6 possibility of future harm." *San Diego County*, 98 F.3d at 1126.

As discussed above, the Plaintiff failed to allege an injury-in-fact that satisfies the first standing requirement because he did not articulate a concrete and particularized injury resulting from operation of the Act.

Additionally, Plaintiff fails to establish the required causal nexus between the alleged injury and the operation of SB1070, as amended, because the statute's language and the constitutional principles that must be applied when it is implemented prohibit racial profiling. According to the Supreme Court, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In the context of suits challenging the provisions of a state law, the Court should consider "whether the plaintiffs face a 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Thomas*, 220 F.3d at 1139 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). If Plaintiff were, in fact, confronted by a law enforcement officer in Arizona solely because he is Hispanic, this conduct would not be authorized by SB 1070, as amended by HB 2162. Instead, it would be the result of "the independent action of a third party not before the court" and would not satisfy the causation prong of the standing analysis. *Lujan*, 504 U.S. at 560. Neither Arizona's law nor constitutional principles authorize the conduct that Plaintiff fears.

The absence of injury-in-fact, together with the lack of any causal nexus between the Defendants and the potential injuries claimed by the Plaintiffs, establish that the Plaintiffs lack standing in this case and their claims should be dismissed.

**IV.     CONCLUSION**

For the reasons set forth above and those set forth in Governor Brewer's Motion to Dismiss, the Court should dismiss this action because it is not ripe for adjudication and Plaintiff lacks standing to assert the claims in the Complaint.

Respectfully submitted this 11th day of June, 2010.

                    Terry Goddard
                    Attorney General

                    <u>s/ Christopher A. Munns</u>
                    Mary G. O'Grady
                    Solicitor General
                    Christopher A. Munns
                    Assistant Attorney General
                    Attorneys for Defendant Terry Goddard

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June, 2010, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing, and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John J. Bouma
Robert A. Henry
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004
*jbouma@swlaw.com*
*bhenry@swlaw.com*

**COPY** of the foregoing mailed
this 11th day of June, 2010 to:

Roberto Javier Frisancho
1311 Delaware Avenue, S.W., Apt. S 337
Washington, D.C.  20024
Plaintiff *pro se*

 s/ Maureen Riordan
Secretary to Christopher Munns

*#840150*