1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Roberto Javier Frisancho,            )   No. CV 10-926-PHX-SRB
                                         )
10              Plaintiff,               )   **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    Jan Brewer, in her official capacity as)
13  Governor of the State of Arizona; Terry)
    Goddard, in his official capacity as)
14  Attorney General of the State of Arizona,)
                                         )
15              Defendants.              )
                                         )
16  _____)

17

18

19          This matter comes before the Court on Defendant Terry Goddard's Motion to Dismiss

20  ("Goddard Mot.") (Doc. 22) and Defendant Jan Brewer's Motion to Dismiss ("Brewer Mot.")

21  (Doc. 23). At this time, the Court also resolves Plaintiff's pending Motion for Leave to File

22  Second Amended Complaint and Motion for Leave to File Third Amended Complaint (Docs.

23  41, 47).

24  **I.     BACKGROUND**

25          The Arizona Legislature enacted a set of statutes and statutory amendments in the

26  form of Senate Bill 1070, the "Support Our Law Enforcement and Safe Neighborhoods Act,"

27  2010 Arizona Session Laws, Chapter 113, which Governor Janice K. Brewer signed into law

28  on April 23, 2010. Seven days later, the Governor signed into law a set of amendments to

Senate Bill 1070 under House Bill 2162, 2010 Arizona Session Laws, Chapter 211.[1] S.B. 1070 had an effective date of July 29, 2010.

Plaintiff Roberto Frisancho, who is proceeding pro se in this matter, challenges several provisions of S.B. 1070.[2] Section 1 of S.B. 1070 states that "the intent of [S.B. 1070] is to make attrition through enforcement the public policy of all state and local government agencies in Arizona" and that "[t]he provisions of this act are intended to work together to discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States." Section 1 also states that "there is a compelling interest in the cooperative enforcement of federal immigration laws throughout all of Arizona." Section 2 of S.B. 1070 requires law enforcement officials to check a person's immigration status under certain circumstances. Plaintiff principally contests Section 2(B) of S.B. 1070, which requires officers to make a reasonable attempt, when practicable, to determine an individual's immigration status during any lawful stop, detention, or arrest where reasonable suspicion exists that the person is unlawfully present in the United States. Ariz. Rev. Stat. ("A.R.S.") § 11-1051(B). Subsection 2(B) also requires that all persons who are arrested have their immigration status verified prior to release. *Id.* Section 3 of S.B. 1070 adds A.R.S. § 13-1509, which provides that "a person is guilty of willful failure to complete or carry an alien registration document if the person is in violation of [8 U.S.C. §§] 1304(e) or 1306(a)," federal statutes that require aliens to carry documentation of registration and penalize the willful failure to register. A.R.S. § 13-1509(A).

Plaintiff filed the instant lawsuit on April 27, 2010, after S.B. 1070 was signed but before it was modified by H.B. 2162, naming as Defendants Governor Brewer and Attorney

---

[1] In this Order, unless otherwise specified, the Court refers to S.B. 1070 and H.B. 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

[2] In Plaintiff's First Amended Complaint ("FAC"), he states that he challenges Sections 1 and 2 of S.B. 1070. (FAC ¶ 2.) In his proposed Second Amended Complaint ("SAC"), Plaintiff seeks to add a challenge to Section 3 of 1070. (Doc. 42, Lodged Proposed SAC ¶ 2.)

1  General Goddard. (*See* Doc. 1.) Defendants Goddard and Brewer moved to dismiss,

2  separately, on June 11, 2010. (Docs. 22-23.) The same day, Plaintiff filed a Motion for Leave

3  to File First Amended Complaint. (Doc. 24.)[3] On June 18, 2010, the Court denied Plaintiff's

4  Motion for Leave to File First Amended Complaint as moot and directed the Clerk to file

5  Plaintiff's FAC. (Doc. 29.) Plaintiff subsequently moved for leave to file his SAC and a

6  proposed Third Amended Complaint ("TAC"). (Docs. 41, 47.)[4]

7       Plaintiff, "a Hispanic male, is a natural born citizen of the United States and a resident

8  of the District of Columbia." (FAC ¶ 10.) In the FAC, Plaintiff states that he "will visit

9  Arizona in September 2010 and return over the next few years" to conduct research. (*Id.*) In

10  the proposed SAC and TAC, Plaintiff adds more detail regarding his plans and states that he

11  will travel to Arizona on July 29, 2010. (SAC ¶¶ 10, 43-45, 53; TAC ¶ 49.) Defendants

12  Goddard and Brewer challenge Plaintiff's standing to pursue his challenges to S.B. 1070.

13  (Goddard Mot. at 9-11; Brewer Mot. at 5-8.)

14  **II.   LEGAL STANDARDS AND ANALYSIS**

15      **A.   Standing**

16       Pursuant to Federal Rule of Civil Procedure 12(b)(1), both Governor Brewer and

17  Attorney General Goddard move to dismiss, arguing that Plaintiff does not have standing to

18  bring this action. (Goddard Mot. at 9-11; Brewer Mot. at 5-8.) Under Article III of the

19  Constitution, a plaintiff does not have standing unless he can show (1) an "injury in fact" that

20  is concrete and particularized and actual or imminent (not conjectural or hypothetical); (2)

21  that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is

22  likely, as opposed to merely speculative, that the injury will be redressed by a favorable

23  decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Summers v.*

24

25      [3] Because Plaintiff is pro se, he did not have notice of Defendants' Motions to Dismiss

26  at the time he filed his Motion for Leave to File First Amended Complaint.

27      [4] In this Order, the Court focuses primarily on the FAC, considering the SAC and TAC only where relevant. The Court's conclusions with respect to Plaintiff's standing to

28  bring this action are the same under the FAC, the SAC, or the TAC.

*Earth Island Inst.*, 129 S. Ct. 1142, 1148-49 (2009) (observing that standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction" (internal quotation and citation omitted)). Even when the constitutional minima of standing are present, prudential concerns may impose limitations. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004). Prudential standing limitations embody "'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Defendant Goddard states, "Plaintiff failed to allege an injury-in-fact that satisfies the first standing requirement because he did not articulate a concrete and particularized injury resulting from operation of the Act." (Goddard Mot. at 10.) Likewise, Defendant Brewer asserts that Plaintiff's potential injury is speculative. (Brewer Mot. at 5.) Plaintiff's FAC states, "As a Hispanic, the Plaintiff is likely to be asked for his papers based on the 'reasonable suspicion' that he is undocumented on the basis of his ethnicity." (FAC ¶ 41.) The FAC also states that Plaintiff "will visit Arizona in September 2010 and return over the next few years" to perform research. (*Id.* ¶ 10.)

Plaintiff's proposed SAC and TAC add a bit more detail about his plans, stating that he "will travel to Arizona on July 29, 2010 and stay for a few days." (SAC ¶ 10.) In the SAC, Plaintiff also specifies that he plans to spend July 30, 2010, in Maricopa County and plans not to carry identification when he is not engaged in an activity like driving a car. (*Id.* ¶¶ 43-45.) Plaintiff also states in his SAC:

> When the Plaintiff is stopped or detained by a police officer, the Plaintiff, as a Hispanic, will be asked, on the basis of his ethnicity, for his papers based on the 'reasonable suspicion' that he is unlawfully present in the United States or a legal immigrant who is not carrying his alien registration card.

(*Id.* ¶ 53.) The proposed TAC adds a few other details, including the statement that "[i]f stopped or detained by a law enforcement official, the Plaintiff will, if asked, disclose his identity but will not answer further questions, including questions about his citizenship status." (TAC ¶ 49.)

1    Even with the additional facts contained in the proposed SAC and TAC, Plaintiff has

2    not described an injury that is "concrete and particularized[] and . . . actual and imminent,

3    not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations

4    omitted). The Court is without information as to whether Plaintiff indeed traveled to Arizona

5    on July 29, 2010, but it does not matter for purposes of assessing Plaintiff's standing.[5]

6    Plaintiff's potential injury from the enforcement of S.B. 1070, specifically Section 2, is

7    simply too attenuated to confer standing on him. For Plaintiff to be injured by the

8    enforcement of the "reasonable suspicion" provision of Section 2, the following would have

9    to happen in succession: (1) Plaintiff would have to be lawfully stopped, detained, or

10   arrested; (2) the officer would have to develop reasonable suspicion that Plaintiff was both

11   an alien and unlawfully present in the United States. (*See* A.R.S. 11-1051(B).) Plaintiff's

12   allegations that he intends to travel to Arizona, plans to not carry identification unless

13   operating a motor vehicle, and plans to not answer questions regarding his immigration

14   status, if asked, do not rise to the level of concrete, particularized, actual, imminent injury.

15   Plaintiffs challenging a statute on the basis of the possibility of prosecution for

16   engaging in conduct arguably raising a constitutional interest are not "'required to await and

17   undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt v. United Farm*

18   *Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Doe v. Bolton*, 410 U.S. 179, 188

19   (1973)). "To assert standing on this basis, however, plaintiffs must show a '*genuine* threat

20   of *imminent* prosecution' under the [relevant statute]." *San Diego Cnty. Gun Rights Comm.*

21   *v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (quoting *Wash. Mercantile Ass'n v. Williams*,

22   733 F.2d 687, 688 (9th Cir. 1984)) (emphasis added in *San Diego Cnty. Gun Rights Comm.*).

23   The plans Plaintiff has articulated in the FAC, SAC, and TAC are not concrete enough to

24   create a realistic threat of imminent prosecution under S.B. 1070. The SAC states, "When

25   . . . Plaintiff *is stopped or detained* by a police officer, the Plaintiff, as a Hispanic, *will be*

26

27        [5] The fact that this Court, in another case, entered a preliminary injunction barring the

28   enforcement of certain sections of S.B. 1070 before the provisions took effect is also
     immaterial to this analysis.

1   *asked*, on the basis of his ethnicity, for his papers. . . ." (SAC ¶ 53 (emphasis added).) This

2   statement is not plausible because it states in definite terms events that Plaintiff can only

3   speculate about, namely whether he will be stopped or detained and whether he will be asked

4   to prove his immigration status.

5   **III.   CONCLUSION**

6        Plaintiff has not alleged "non-conclusory 'factual content,'" from which the Court can

7   draw reasonable inferences that are "plausibly suggestive of a claim entitling the plaintiff to

8   relief." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1952). Therefore, and for the

9   reasons stated above, the Court finds that Plaintiff does not have standing to bring this

10  lawsuit at this time. Permitting Plaintiff to amend his FAC as he proposes to do in his SAC

11  or TAC would be futile because those documents do not cure the deficiencies in pleading set

12  forth in this Order.

13       **IT IS ORDERED** granting Defendant Terry Goddard's Motion to Dismiss (Doc. 22).

14       **IT IS FURTHER ORDERED** granting Defendant Jan Brewer's Motion to Dismiss

15  (Doc. 23).

16       **IT IS FURTHER ORDERED** denying as moot Plaintiff's pending Motion for Leave

17  to File Second Amended Complaint and Motion for Leave to File Third Amended Complaint

18  (Docs. 41, 47).

19       **IT IS FURTHER ORDERED** directing the Clerk to enter judgment of dismissal in

20  this matter.

21

22       DATED this 24th day of August, 2010.

23

24

25                              _____

26                                  Susan R. Bolton
                              United States District Judge

27

28